IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14–cv–01188–CMA–KMT

ANN MARIE JULIE MEDINA, and
SAMUEL MEDINA, JR.,

Plaintiffs,

v.

WERNER ENTERPRISES, INC.,

Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Magistrate Judge Kathleen M. Tafoya**

This case comes before the court on "Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6)." (Doc. No. 22, filed July 14, 2014.) For the following reasons, the court recommends that Defendant's Motion to Dismiss be GRANTED.

**FACTUAL BACKGROUND**

Generally, Plaintiffs allege that Defendant violated their rights when it refused to hire Plaintiff Julie Medina because she is disabled. The following factual background is taken from Plaintiffs' Complaint and Jury Demand. (Doc. No. 1 [Compl.].)

In May 2008, Ms. Medina underwent a shoulder surgery to replace her shoulder joint. (Compl. ¶ 10.) Later, in September 2008, Ms. Medina underwent a "neck infusion." (*Id.*) Finally, in March 2009, Ms. Medina was diagnosed with arthritis and completely deteriorated joints in her hand and thumb, due to her long-time occupation as a hair stylist. (*Id.*) In an effort

to improve these medical issues, Ms. Medina received ongoing medical treatment and physical therapy for several years. (*Id.*)

After her treatment, Ms. Medina participated in a vocational rehabilitation service to help her find a different occupation because she could no longer be employed as a hair stylist. (*Id.* ¶ 11.) In September 2012, a vocational rehabilitation specialist informed Ms. Medina that she could work in the trucking industry with her disabilities, so long as she was trained and licensed into that field. (*Id.*)

In October 2012, Ms. Medina and her husband, Plaintiff Samuel Medina, Jr., enrolled at the United States Truck Driving School in Colorado with the intention of "team driving" trucks together. (*Id.* ¶ 12.) On October 20, 2012, in their first week of attendance at the school, Plaintiff's applied for employment with Defendant with the assistance of "Brad," one of Defendants' recruiters. (*Id.* ¶ 14.) On October 26, 2012, Plaintiffs received a letter stating that they were "pre-hired" as "team drivers" by Defendant. (*Id.*)

In November 2012, Plaintiffs completed their coursework at the United States Truck Driving School. (*Id.* ¶ 15.) Shortly thereafter, Plaintiffs completed orientation and passed a test, both of which were required prior to being fully hired by Defendant. (*Id.*)

Shortly after completing orientation, Ms. Medina was notified by Defendant that she would not be hired. (*Id.* ¶ 16.) Defendant did not provide any explanation for this decision. (*Id.*) Plaintiffs maintain that because they were originally pre-hired as a team, and they wanted to remain a team, Defendants effectively did not hire Mr. Medina. (*Id.*)

On January 25, 2013, Mr. Medina attended a recruiting event to search for employment with other trucking companies. (*Id.* ¶ 17.) At the event, Mr. Medina spoke with Brad, who stated that he was "sad that they could not hire [Ms. Medina] because of her disability." (*Id.*) When Mr. Medina inquired as to what he meant, Brad informed Mr. Medina that Defendant refused to hire individuals with disabilities or individuals who were receiving disability assistance. (*Id.* ¶ 18.) Brad further stated that Defendant was informed that Ms. Medina was receiving disability and that, as a consequence, Defendant was unable to hire her. (*Id.*)

**PROCEDURAL HISTORY**

Based on the facts recited above, Plaintiffs' Complaint asserts five claims for relief. Plaintiffs' first and second claims allege that Defendant violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, as amended by the ADA Amendment Act of 2008 (collectively, the "ADA"). Plaintiffs' third, fourth, and fifth claims are state law claims for intentional infliction of emotional distress, breach of contract, and violations of the Colorado Anti-Discrimination Act (CADA), Colo. Rev. Stat. § 24-34-401, *et seq.*, respectively.

Defendant's Motion to Dismiss argues that Plaintiffs' second, third and fourth claims are properly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief.[1] Plaintiffs' Response to Defendant's Motion to Dismiss was filed on August 4, 2014 (Doc. No. 25) and Defendant's Reply was filed on August 14, 2014 (Doc. No. 26). Accordingly, this matter is ripe for the court's ruling and recommendation.

---

[1] Defendant's Motion also seeks to dismiss Plaintiffs' fifth claim to the extent it alleges an association discrimination claim under CADA on behalf of Mr. Medina. (Mot. at 1 n.1) Plaintiffs conceded in their Response, however, that their CADA claim is brought only on behalf of Ms. Medina. (Resp. at 12-13.)

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1198 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 680. Second, the Court considers the remaining factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 663. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (citation omitted).

**ANALYSIS**

***A. Claim Two – ADA Association Discrimination***

The ADA provides that employers shall not "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms conditions, and privileges of employment." 42 U.S.C. § 12111(a). Disability discrimination includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." *Id.* § 12112(b)(4). This prohibition is known as the "association provision" of the ADA." *Trujillo v. PacifiCorp,* 524 F.3d 1149, 1154 (10th Cir. 2008) (citing *Den Hartog v. Wasatch Acad.,* 129 F.3d 1076, 1082 (10th Cir. 1997).

"A family relationship is the paradigmatic example of a 'relationship' under the association provision of the ADA." *Den Hartog,* 129 F.3d at 1082 (citing 29 C.F.R. § 1630.8). Mr. Medina's relationship to his wife, Ms. Medina, is thus protected by the association provision.

To state a claim for ADA association discrimination, a plaintiff must show that (1) he was "qualified" for the job at the time of the adverse employment action; (2) he was subjected to adverse employment action; (3) he was known by his employer at the time to have a relative or associate with a disability, and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. *See Trujllo,* 524 F.3d at 1154.

Defendant argues that Plaintiffs fail to satisfy the second element of an ADA claim because their allegations do not demonstrate that Mr. Medina suffered an adverse employment action. More specifically, Defendant argues that its alleged refusal to hire Ms. Medina did not preclude Mr. Medina from accepting employment as a solo driver or as a team driver with another Werner driver.

A failure to hire is plainly an adverse employment action. *EEOC v. C.R. England, Inc.,* 644 F.3d 1028, 1040 (10th Cir. 2011). However, Plaintiffs do not allege that Defendant affirmatively refused to hire Mr. Medina—instead they allege only that "by not accepting Plaintiff Julie [Medina], Defendant *effectively* did not hire Plaintiff Sam [Medina]." (Compl. ¶ 16) (emphasis added.) Notably, Plaintiffs do not allege that Defendant would not hire Mr. Medina as a team driver to drive with another Werner driver.

Plaintiff argues that Mr. Medina nevertheless suffered an adverse employment action because Defendant failed to hire him for the specific employment opportunity he applied for—a team of drivers with his wife. The refusal to hire a plaintiff for the position that he or she applied for can constitute an adverse employment action. *Sibilla v. Follett Corp.,* No. CV 10-1457(AKT), 2012 WL 1077655, at *12 (E.D.N.Y Mar. 30, 2012) (citing *Ghosh v. New York City Dep't of Health,* 413 F. Supp. 2d 322, 332 (S.D.N.Y. 2006) & *Coger v. Connecticut,* 309 F. Supp. 2d 274, 284 (D. Conn. 2004). "However, there is no adverse employment action if the position sought and the position offered have substantially the same salary, benefits, job duties, opportunities for promotion, and so on." *Conrad v. Zonar Sys., Inc.,* No. C12-1068JLR, 2013 WL 6498289, at *4 (W.D. Wash. Dec. 11, 2013) (citing *Sibilla*, 2012 WL 1077655, at *12).

Here, although Plaintiffs allege that team drivers receive higher pay than solo drivers (Compl. ¶ 21; *see also* Resp. at 5), they do not allege that the salary, job duties, or opportunities offered to team drivers hired as a full team differ from those offered to team drivers hired individually. Ultimately then, the only alleged difference between Mr. Medina being hired as a team driver with Ms. Medina and being hired as a team driver individually is the benefit to Mr. Medina of being on a team with his wife instead of an unknown Werner driver. The court is persuaded by the reasoning of *Atkinson v. Wiley Sanders Truck Lines, Inc.,* 45 F. Supp. 2d 1288 (M.D. Ala. 1998) that this falls short of constituting an adverse employment action.

In *Atkinson*, the plaintiff worked as a truck driver for the defendant and sought to participate in the defendant's spouse rider program. *Id.* at 1291. The defendant's safety director informed the plaintiff that, due to liability concerns, his wife would not be permitted to ride

along with him under the spouse rider program because she had diabetes. *Id.* As a result, the plaintiff quit and brought an ADA association discrimination claim against the defendant. *Id.*

The court rejected the plaintiff's argument that the defendant's refusal to allow him to participate in the spouse rider program constituted an adverse employment action. *Id.* at 1293-1294. First, the court found that the plaintiff failed to set forth any support for the proposition that participation in the spouse rider program is the type of fringe benefit that the ADA was intended to protect. *Id.* Instead, the fringe benefits protected under the ADA are privileges such as health and life insurance benefits, retirement funds, profit-sharing, paid holiday and vacations, and sick leave. *Id.* at 1293 (citing 29 C.F.R. app. §1630.8).[2] Second, the court found that denying participation in the spouse rider program did not amount to an adverse employment action because the plaintiff did not show the decision affected or could affect his salary, chances of promotion, ability to perform his job, or resulted or could result in any other final adverse employment action.

Plaintiff argues that *Atkinson* is distinguishable because, unlike here, the *Atkinson's* plaintiff spouse was not being hired as an employee, and therefore did not have any duty to drive and was not being compensated for riding along. While that is true, here, Plaintiffs' do not

---

[2] As noted in *Atkinson,* the appendix to § 1630.8 discusses the protection of "other benefits and privileges of employment" in the context of association discrimination, citing the following example:

> [A]n employer that provides *health insurance benefits* to its employees for their dependents may not reduce the level of those benefits to an employee simply because that employee has a dependent with a disability [ ] even if the provision of such benefits would result in increased health insurance costs for the employer.

29 C.F.R. app. § 1630.8 (emphasis added).

allege that Mr. Medina would face any additional detriment to his compensation or the terms of this employment if he was employed as a team driver with another Werner driver, as opposed to his wife. If Mr. Medina drove with another of Defendant's drivers, they would have shared the driving responsibilities, and staggered their sleep schedules in order to haul more loads over longer distances, just as Mr. and Ms. Medina would have done if hired as a team. (*See* Resp. at 5-6.) Ultimately, the only detriment suffered by Mr. Medina from Defendant's refusal to hire Ms. Medina is the same detriment suffered by the *Atkinson* plaintiff—the inability to drive with his preferred companion, his wife.

Further, the court agrees with the *Atkinson* court that the denial of the benefit of driving with one's spouse is insufficient to establish an adverse employment action. The Tenth Circuit has held that, generally, "only acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits will rise to the level of an adverse employment action." *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1040 (10th Cir. 2011) (citation and internal quotation marks omitted). *See also Hillig v. Rumsfeld*, 381 F.3d 1028, 1031 (10th Cir. 2004) (actions that cause "harm to future employment prospects," such as a negative job reference, may also constitute an adverse employment action). Thus, "although the term is not confined to, for example, monetary losses in the form of wages or benefits, a mere inconvenience or an alteration of job responsibilities does not constitute an adverse employment action." *C.R. England*, 644 F.3d at 1040 (citations and internal punctuation marks omitted). "Accordingly, a plaintiff must show that the alleged adverse action caused more than '*de*

*minimus* harm' to or a '*de minimus* impact' upon [his] job opportunities or status." *Id.* (quoting *Hillig*, 381 F.3d at 1033).

The court finds that Mr. Medina's inability to team drive with his wife was not tantamount to a significant change in employment status, a reassignment with significantly different responsibilities, or a significant change in benefits. Although it may not have been ideal in his mind, the court finds that the prospect of Mr. Medina being a team driver with another Werner employee amounted to a mere inconvenience that had no more than a *de minimus* impact on Mr. Medina's job opportunities. Therefore, the court finds that Plaintiffs' Complaint fails to allege that Mr. Medina suffered an adverse employment action.

Finally, the court rejects Plaintiffs' argument that the refusal to hire Ms. Medina amounted to constructive discharge of Mr. Medina. "Although an employee's voluntary resignation from employment ordinarily is not an adverse action, an adverse action can be established where the employee shows that the conditions in the workplace had been so intolerable that a reasonable employee would have felt compelled to quit. *Peru v. T-Mobile USA, Inc.*, 897 F. Supp. 2d 1078, 1096 (D. Colo. 2012) (citing *Narotzy v. Natrona Cnty. Mem. Hosp. Bd. of Trustees*, 610 F.3d 558, 565-66 (10th Cir. 2010)). Initially, the court finds Plaintiffs' constructive discharge theory to be problematic because Mr. Medina never worked for Defendant and therefore did not experience *any* conditions of employment—let alone conditions that a reasonable employee would find intolerable. Moreover, even if Plaintiffs could avail themselves of a constructive discharge theory, the court finds that a plaintiff's mere inability to

drive with the person of his choice, even when that individual is his spouse, is not so intolerable that a reasonable employee would feel compelled to quit.

Accordingly, for the reasons stated above, the court finds that Plaintiffs' Complaint fails to sufficiently allege an ADA association discrimination claim. Therefore, the court finds that Plaintiff's second claim for relief is properly dismissed.

### *B. Claim Three – Intentional Infliction of Emotional Distress*

The court also finds that Plaintiffs' third claim for intentional infliction of emotional distress fails to state a claim for relief. To state a claim for intentional infliction of emotional distress, a plaintiff must show that "(1) the defendant engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the plaintiff severe emotional distress; (3) causing the plaintiff to suffer emotional distress." *McCarty v. Kaiser-Hill Co., LLC*, 15 P.3d 1122, 1126 (Colo. App. 2000). As to the first element,

> [t]he level of outrageousness required to create liability for intentional infliction of emotional distress is extremely high: "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

*Coors Brewing Co. v. Floyd*, 978 P.2d 663, 665-66 (Colo. 1999) (quoting *Rugg v. McCarty*, 476 P.2d 753, 756 (Colo. 1970)).

A claim of unlawful discrimination alone does not support a claim for intentional infliction of emotional distress. *Bigby v. Big 3 Supply Co.*, 937 P.2d 794, 800 (Colo. App. 1996) (addressing a disability claim under the Colorado Anti-Discrimination Act). Indeed, to hold that every discrimination claim—whether based on race, national origin, religion, sex, age, or

disability—automatically constituted outrageous conduct would stretch the tort far beyond its intended boundaries. *Id.* Instead, a discriminatory employment action will rise to the level of outrageous conduct only where the manner of discharge was outrageous. *Id.*

Here, while they may establish a violation of the ADA, Plaintiffs' allegations fail to demonstrate that Defendant's decision not to hire Ms. Medina was carried out in an outrageous manner. Indeed, Ms. Medina was simply notified, without explanation, that she would not be hired. Although Mr. Medina may have later learned that the Ms. Medina's disability was the reason Defendant refused to hire her, the court finds that alone does not establish that Defendant's refusal to hire Ms. Medina was carried out in an outrageous manner.

Plaintiffs also argue that Defendant's decision not to hire Ms. Medina was outrageous because it was made pursuant to a policy, pattern, or practice not to hire disabled persons. However, even assuming that Defendant maintained such a policy, that does not change the fact that the manner in which Defendant refused to hire Ms. Medina was not outrageous.

Accordingly, the court finds that Plaintiffs allegations fail to establish a claim for intentional infliction of emotional distress. Therefore, the court finds that Plaintiffs' third claim for relief is properly dismissed.

***C. Claim Four - Breach of Contract***

Defendants argue that Plaintiffs' fourth claim fails to state a claim for breach of contract because the pre-hire letter it sent to Plaintiffs did not constitute an enforceable contract and, even if it did, Plaintiffs have alleged no facts to overcome the presumption of at-will employment in Colorado.

To state a claim for breach of contract, a plaintiff must allege (1) the existence of a contract, (2) performance by the plaintiff or some justification for non-performance, (3) the defendant's failure to perform the contract, and (4) resulting damages to the plaintiff. *W. Distrib. Co. v. Diodosio*, 941 P.2d 1053, 158 (Colo. 1992). An enforceable contract requires mutual assent to an exchange, between competent parties, with regard to certain subject matter, for legal consideration. *Indus. Products Int'l v. Emo Trans, Inc.*, 962 P.2d 983, 988 (Colo. App. 1997) (citing *Denver Truck Exch. v. Perryman*, 307 P.2d 805 (Colo. 1957)). "[A]ny benefit to a promisor or any detriment to a promisee at the time of the contract—no matter how slight—constitutes adequate consideration." *Lucht's Concrete Pumping, Inc. v. Horner*, 255 P.3d 1058, 1061 (Colo. 2011).

In Colorado, in the employment context, "there is a presumption that an employee hired for an indefinite period of time is an at-will employee who may be terminated for no cause whatever at any time." *Martin Marietta Corp. v. Lorenz*, 823 P.2d 100, 105 n.1 (Colo. 1992). This presumption is not absolute, however, and can be rebutted under certain circumstances. *Schur v. Storage Tech. Corp.*, 878 P.2d 51, 53 (Colo. App. 1994). The employee must plead facts sufficient to rebut the presumption of at-will employment. *Jaynes v. Centura Health Corp.*, 148 P.3d 241, 243 (Colo. App. 2006) (citing *Pickell v. Ariz. Components Co.*, 931 P.2d 1184 (Colo. 1997)). An employee may rebut the presumption of at-will employment by proving that "an explicit term of the employment contract restricts the employer's right to discharge (such as an undertaking to discharge only for cause), or that an employer's policy statement restricting such right has been properly accepted as part of that contract." *Schur*, 878 P.2d 51, 53 (Colo. App. 1994). However, absent "special consideration" or "an express stipulation as to the

duration of employment," a contract for permanent employment is no more than an indefinite, general hiring terminable at the will of either party. *Id.*

As a threshold matter, the court does not read Plaintiffs' Complaint to allege that Defendant's failure to hire Ms. Medina due to her disabilities amounted to a wrongful discharge in violation of public policy. *See Martin Marietta Corp.*, 823 P.2d at 105-107 (recognizing and discussing the public-policy exception to the presumption of at-will employment). However, even assuming Plaintiffs intended to assert such a claim and premise it on Defendant's alleged violation of the ADA, Colorado law does not permit wrongful discharge in violation of public policy claims where the public policy is embodied in a federal anti-discrimination scheme containing its own remedial scheme. *Peru v. T-Mobile USA, Inc.*, 897 F. Supp. 2d 1078, 1087 (D. Colo. 2012 (citing *Krauss v. Catholic Health Initiatives Mountain Region*, 66 P.3d 195, 203 (Colo. App. 2003)). Here, because the ADA provides a remedy for disability discrimination in the employment context, Plaintiffs cannot pursue a wrongful discharge claim.

Otherwise, even assuming that the pre-hire letter sent by Defendant to Plaintiffs constituted an enforceable contract to hire Plaintiffs so long as they passed an unspecified test and completed orientation, the court finds that Plaintiffs fail to allege any facts overcoming the presumption that Ms. Medina could be terminated at-will by Defendant. Plaintiffs do not allege that the pre-hire agreement set forth a specified duration of Plaintiffs' employment as team drivers or any other restriction on Defendant's right to discharge Mr. or Ms. Medina. As such, even assuming Defendant breached the terms of the pre-hire agreement by failing to hire Ms. Medina, Plaintiffs cannot establish that Ms. Medina, if hired, would have been anything other than an at-will employee subject to termination for any reason or no reason at all. In other

words, Plaintiffs cannot establish that they suffered any damages as a result of Defendant's alleged breach of the pre-hire letter.[3] Accordingly, the court finds that Plaintiff fail to state a claim for breach of contract and that consequently, their fourth claim for relief is properly dismissed.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that "Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6)" (Doc. No. 22) be GRANTED and that Plaintiffs' second, third, and fourth claims for relief be dismissed with prejudice.

**ADVISEMENT TO THE PARTIES**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo

[3] In their Response, Plaintiffs cite to *Marsh v. Delta Air Lines, Inc.,* 952 F. Supp. 1458, 1465 (D. Colo. 1997) for the proposition that "[i]f an employer makes a promise to deal with an employee in a fair manner, and the employee gives the consideration of continued performance in response to this promise, and later the employer breaks its promise, then the employee has a cause of action for breach of contract." (Resp. at 11-12.) However, *Marsh* discussed a breach of contract based on an *express* covenant of good faith and fair dealing. *Id.* (discussing *Decker v. Browning-Ferris Indus. of Colo., Inc.*, 931 P.2d 436 (Colo. 1997)). Here, Plaintiffs do not allege that Defendant ever made an express promise to deal with them in a good faith or fair manner. Further, Colorado does not recognize an implied covenant of good faith and fair dealing in employment contracts. *Id.; see also Farmer v. Cent. Bancorporation, Inc.*, 761 P.2d 220, 222 (Colo. App. 1988) (noting that "[a]n implied covenant of good faith and fair dealing found in some commercial contracts does not extend to at will employment contracts).

review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 30th day of January, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge